IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIO FERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-3558 |
| | § | |
| MUTUAL OF OMAHA INS. CO., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The cross-motions for summary judgment in this disability insurance dispute raise one legal issue: whether the statute of limitations bars the plaintiff's causes of action. The answer depends on when the limitations periods began to run. If the defendant insurer's July 27, 2009 letter to the plaintiff insured legally denied the claim, then, as the plaintiff concedes in his brief, all his causes of action are barred. If, as the plaintiff contends, the July 27, 2009 letter did not legally deny the claim, the causes of action alleged did not accrue until the policy terminated when he became 65, and the action is timely filed.

Based on the undisputed facts in the summary-judgment record, the July 27, 2009 letter repeating an earlier letter stating that the plaintiff's benefits claim was "inactive," legally denied the claim. The statutory and extracontractual claims had to be brought by July 27, 2011. The breach of contract claim, subject to a three-year contractual-limitations period, had to be brought by July 27, 2012. Fernandez filed this suit on September 30, 2013, well after all limitations periods had expired.

A related issue is whether the policy required periodic proof-of-loss submissions. Fernandez maintains that he only had to submit an initial proof of loss and that the policy's silence on

continued proof of continued disability made the cessation of payments improper. The court concludes that the policy authorized periodic proof of total disability. The policy required any lawsuit to be filed within three years after the last proof of loss was required, which is September 15, 2010 at the latest. That date is more than three years before Fernandez filed this suit.

Mutual of Omaha's summary-judgment motion is granted, and Fernandez's summary-judgment motion is denied. Final judgment is entered under separate order. The reasons are explained below.

**I.     Background**

Aetna Life Insurance Company issued a "Non-Cancellable and Guaranteed Continuable Disability Income Policy" to the plaintiff, Mario A. Fernandez, effective on October 28, 1981. (Docket Entry No. 9-1 at 3, 5). The policy was later assigned to Mutual of Omaha, the defendant in this suit.

Retinitis pigmentosa caused Fernandez to lose his eyesight. He became disabled in 1984 and submitted his claim for total disability on May 9, 1984. He received monthly long-term disability benefits under his insurance policy. (*Id.* at 3).

The policy required written proof of loss for payment of benefits. "For a monthly benefit, the proof must be given within 90 days after the period for which [the insurer] is liable." (*Id.* at 8). "For any other benefit, the proof must be given to [the insurer] within 90 days after the loss occurs. . . . In any case, the proof must be given within 15 months after the loss occurs, unless there is a lack of legal capacity." (*Id.*). The policy specified a limitations period of "3 years after the date proof of loss [wa]s required." (*Id.* at 9). The policy stated that if state law made the three-year limitations period too short, the period would be "the shortest limit allowed by law." (*Id.*).

Fernandez received $1,000 monthly payments from 1984 to 2007. He submitted his medical records on a "periodic" basis as proof of his loss. On June 8, 1992, Mutual of Omaha informed Fernandez that "[b]eginning immediately, both you and your doctor will be required to complete a proof form only once a year. When a proof form is needed, we will notify you at least 30 days in advance and supply you with the necessary form at that time to be completed by you and your doctor." (*Id.* at 21). The letter told Fernandez that he would automatically receive his monthly payments on approximately the same date each month as long as he qualified for the benefits. (*Id.*).

Until March 23, 2006, Fernandez timely responded to Mutual of Omaha's requests for proof of continuing disability by submitting "Continuance of Disability" — "COD"— forms when asked to do so. The CODs in the record indicated that a physician had last treated Fernandez for his eye condition in January 2003. Sometime after March 23, 2006, Fernandez authorized his sons and wife to discuss his policy with the insurance company. The March 2006 COD was the last one that Fernandez or his authorized representatives submitted.

On May 8, 2009, Mutual of Omaha sent Fernandez a letter telling him that it required an updated COD form. The letter stated:

> To date we have not received the completed [COD] form. Please have the form completed and returned so this claim for benefits can continue to be processed.
>
> If we do not receive the completed form within 30 days, this claim will be placed on inactive status until the completed form is received.

(*Id.* at 17).

On June 3, 2009, about a week before Mutual of Omaha stated that it would place the claim on inactive status, Danny Fernandez, one of Fernandez's sons, called Mutual of Omaha and stated that Fernandez was in prison. Mutual of Omaha learned that Fernandez was serving a 10-year prison sentence for firearms-related offenses. *See United States v. Mario Arturo Fernandez, et al.*,

3

No. 4:05-cr-64. On June 23, 2009, after the policy was put on inactive status, Mutual of Omaha contacted Danny Fernandez to inform him that no additional benefits could be paid until Mario Fernandez and his doctor completed a COD form verifying Fernandez's condition and stating that he was receiving treatment for his disability. No COD form was received.

On July 27, 2009, after communicating to Fernandez's representative that no additional payments could be paid until it received a COD form, Mutual of Omaha sent Fernandez another letter stating that a COD form had to be submitted within 30 days and that "this claim will be placed on inactive status until the completed form is received." (*Id.* at 16). Neither Fernandez nor anyone acting for him sent a COD form or any other communication. Mutual of Omaha terminated the monthly benefits effective June 15, 2009. That was the date of the last monthly disability-benefits check Mutual of Omaha sent to Fernandez. The next monthly check would have been sent on July 15, 2009; no check was sent in July or thereafter.

Fernandez sued Mutual of Omaha on September 30, 2013 in state court, asserting causes of action for breach of contract, breach of the common law duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act. (Docket Entry No. 1-2, Original Petition, at 9–14). Mutual of Omaha timely removed based on diversity of citizenship. The parties agree that the limitations period for the Texas statutory claims is two years; the limitations period set by the parties' contract was lawfully set at three years, shortening the four-year statute of limitations otherwise applicable to breach of contract claims in Texas. The only dispute is when the causes of action accrued.

According to Mutual of Omaha, the latest date on which the causes of action accrued and limitations began to run was September 15, 2010, fifteen months after it issued the last disability

4

check. Fernandez must have filed suit by September 15, 2013. Because he waited until September 30, 2013, his suit was untimely.

According to Fernandez, the causes of action did not accrue until the policy ended in September 2013 on its own terms. If so, Fernandez could have filed suit under the contractual limitations period until September 2016, and his suit is timely.

## II. The Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *U.S. v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**B.     Limitations**

Determining when a cause of action accrues is normally a question of law. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)). In a denial-of-coverage dispute, the accrual date is the date when the insurer denies coverage. *Knott*, 128 S.W.2d at 221. Once the insured knows that the insurer has not paid a claim, the insured has sufficient facts to seek a judicial remedy. *See Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.*, 262 S.W.3d 107, 119 (Tex. App. —Houston [1st Dist.] 2008, no pet.). A letter that informs the insured that the insurer will change its denial-of-coverage decision does not make the denial ambiguous or postpone the limitations period. *See Pace v. Travelers of Tex. Ins. Co.*, 162 S.W.3d 632, 634 (Tex. App. —Houston [14th Dist.] 2005, no pet.) ("Although the final paragraph of that letter invited Pace to provide any additional information he felt might have an impact on the decision, it did not *request* any further information, suggest that any further information would be needed, or even useful, to reach a decision, or otherwise imply that the coverage decision had not been made.").

"One would expect that in a first party case, the insured's bad faith cause of action accrues the moment an insurer should pay a claim but fails to do so. At that moment, the insurer's wrongful conduct first causes harm to the insured." *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). "Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." *Id*. "When . . . there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be determined on a case-by-case basis." *Id.* at 833 n.2 (citation omitted).

Fernandez concedes that there are no material issues of fact and that the only issue is whether the July 2009 letter denied his claim for continuing monthly disability benefits. The Texas Supreme Court and the Fifth Circuit have held that under Texas law, "in order for a letter [from an insurer] to constitute a denial, the letter need not use the word 'denial,' but only state that there is not coverage for the claim and give reasons why coverage is being denied." *Citigroup, Inc*. *v. Fed. Ins. Co.*, 649 F.3d 367, 374 (citing *Knott*, 128 S.W.3d at 221–22). In *Knott*, the Fifth Circuit held that the insurer denied the insured's claim by informing him that he was not entitled to $7,500 in past benefits, demanding repayment of the $7,500, and refusing to provide continuing coverage under the terms of the insurance policy. Although the Fifth Circuit acknowledged that in some circumstances, "the accrual date of a cause of action based on a violation of the Texas Insurance Code, the bad-faith breach of an insurance contract, or a violation of the DTPA involving insurance coverage, may present questions of fact to be determined on a case-by-case basis," the court found that the insurer's denial was sufficiently clear that determining the accrual date presented only a question of law. *Knott*, 128 S.W.3d at 222. *Knott* made clear that the insurer was not "require[d] . . . to include 'magic words' in its denial of a claim if [its] determination regarding a claim and its reasons for the decision are contained in a clear writing to the insured." *Id.* (citation omitted).

7

### 1.     Limitations for Claims Under the Texas Insurance Code and Texas Deceptive Trade Practices Act

A claim brought under the Texas Deceptive Trade Practices Act must be brought within two years after the consumer discovered or should have discovered an alleged false, misleading, or deceptive act or practice. TEX. BUS & COMM. CODE § 17.565. A claim under the Texas Insurance Code alleging unfair insurance acts or practices must be brought within two years from the date the allegedly unfair act or practice occurred. TEX. INS. CODE § 541.162(a).

### 2.     Limitations for Claims for Breach of Extracontractual Duties

The statute of limitations for extracontractual claims related to insurance contracts and the denial of benefits runs for two years from when the cause of action accrues. That is the date when the insurer denied a claim for benefits. *Wetsel v. State Farm Lloyds Ins. Co.*, No. 3:02-cv-510, 2002 WL 1592665, at *2 (N.D. Tex. July 18, 2012) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Murray v. San Jacinto Agency, Inc*., 800 S.W.2d 826, 828–29 (Tex. 1990); *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977)); *Knott*, 128 S.W.3d at 221, 223 (citing TEX. INS. CODE ART. 21.21 § 16(d); *Murray*, 800 S.W.2d at 828). A two-year statute of limitations triggered by a claim denial fits under the broader rule that "a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy." *Murray*, 800 S.W.2d at 828 (citing *Weaver*, 550 S.W.2d at 19). When the insurer denies benefits, the insured has standing to sue for breach of extracontractual duties. *Id.* Once the insured receives notice of the denial, the limitations period begins. *Id.*

### 3.     Limitations for Breach of Contract Claims

"Under Texas law, contract actions are typically governed by a four-year statute of limitations." *Williams v. Allstate Fire and Cas. Ins. Co.*, No. H-11-cv-530, 2012 WL 1098424, at *4 (S.D. Tex. Mar. 30, 2012) (Rosenthal, J.) (citing TEX. CIV. PRAC. & REM. CODE ANN.

8

§ 16.004(a)); *see Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 312 (Tex. 2006) (per curiam); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).[1] "Contract provisions in insurance policies may limit the statutory limitations period." *Id.* (citing *Bazile v. Aetna Cas. & Sur. Co.*, 784 S.W.2d 73, 74 (Tex. App. —Houston [14th Dist.] 1989, writ dism'd)). "Such provisions are 'valid and enforceable' so long as they do not 'create a limitations period shorter than two years.'" *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 16.070 ("[A] person may not enter a stipulation, contract, or agreement that establishes a limitations period that is shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.")). These contract-limitations periods are "'routinely enforce[d]" by Texas Courts." *Id.* (citing *Watson v. Allstate Tex. Lloyd's*, 224 F. App'x 335, 339 (5th Cir. 2001) (unpublished)). The three-year contractual limitations period for the breach of contract claim in this dispute accrued on the date that coverage was denied. *Knott*, 128 S.W.3d at 221. The issue is when that occurred.

## III.     Discussion

Fernandez concedes that this case turns on whether the July 27, 2009 letter constituted a denial of coverage. (Docket Entry No. 11 at 2, 7 ("The only issue in this case, determinative of Plaintiff's entitlement to the benefits he seeks, is whether the Plaintiff's claim was denied by the July 2009 letter. If so, Plaintiff is time barred.")). He asserts that the statement in the letter that his claim would be put on "inactive status" until Mutual of Omaha received the required COD form meant that the letter did not deny coverage. Fernandez argues that the language shows that his policy and coverage would be "shelved" until the required COD forms were received, not denied.

---

[1] When applicable, the discovery rule will "defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)). "In order for the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable." *Id.* at 312 (citation omitted). The parties do not argue that the discovery rule applies.

9

Fernandez argues that "[a]t some point between July 2009 and September 2013 it was possible that [he] might be able to obtain the necessary [CODs] and the matter would be laid to rest," and that as a result, he "suffered no legal injury from the failure to timely pay until the policy was terminated under its own terms." *Id.* at 6.

Because Fernandez also concedes that he is barred from suing three years after proof of loss was required, the questions are when Fernandez was required to furnish proof of loss and when Mutual of Omaha denied his benefits.

### A.     **Proof of Loss**

As to the first question, the policy contains separate requirements for "notice of claim" and "proof of loss." The policy did not define proof of loss. When left undefined, the generally accepted meaning of proof of loss is "'[a]n insured's formal statement of loss required by an insurance company before it will determine whether the policy covers the loss.'" *Painter Family Invs., Ltd. v. Underwriters at Lloyds*, 836 F. Supp. 2d 484, 493 n.8 (S.D. Tex. 2011) (quoting Black's Law Dictionary 1251 (8th ed. 2004)). The policy covers loss for Injury or Sickness, and a monthly benefit is payable, only "as long . . . as Total Disability continues." (Docket Entry No. 9-1, Ex. A at 7). The policy defines Total Disability in terms of two time frames. During the first 24 months for which a monthly benefit is paid and the insured is under the care of a physician, Total Disability is the inability to perform the main duties of the insured's regular occupation. (*Id.*). After 24 months, Total Disability means that the insured "is unable to engage in any occupation for which the Insured is reasonably suited by education, training and experience, with due regard to prior vocation and economic status; and is under the care of a physician." (*Id.*). Proof of loss that might have shown Total Disability during the first 24 months of Injury or Sickness may no longer qualify the insured for monthly benefits after the first 24 months.

10

The policy required a notice of claim within 90 days after a loss occurs. (*Id.* at 8). The policy also required that written proof of loss must be given within 90 days after the period for which the insurer is liable for the insured to receive a monthly benefit or 90 days after the loss occurs for any other benefit. (*Id.*). Mutual of Omaha correctly notes that the policy distinguished between the initial "notice of claim" and "proof of loss" and that the proof of loss requirement is different for monthly benefits than other benefits. The policy also provided that "[f]ailure to give such proof within that time will not affect a claim if such proof is given as soon as possible. In any case, the proof must be given within 15 months after the loss occurs, unless there is a lack of legal capacity."[2] (*Id.*).

The policy required proof of loss 90 days after the insurer became liable for a monthly benefit. After payment of a monthly benefit, the insured had to submit proof of loss within 90 days for the next monthly benefit. Fernandez periodically sent proofs of loss. On June 8, 1992, Mutual of Omaha informed Fernandez that he and his doctor had to complete a proof of continuing disability once a year and that Mutual of Omaha would inform Fernandez at least 30 days in advance of when the form was needed and supply the necessary form. (*Id.* at 21). Fernandez abided by those COD requirements for many years, until March 2006. Fernandez's argument that the policy did not require him to submit the COD forms is misplaced: his original petition recognized that the insurer retained the "right to have the insured examined as often as it may within reason require while a claim is pending." (Docket Entry No. 1-2 at 8; Docket Entry No. 9-1 at 9). Mutual of Omaha demanded proofs of loss and set a deadline for submission, warning that continued coverage depended on timely compliance.

---

[2] Fernandez does not argue legal incapacity.

11

The policy also had a provision that permitted up to a 15-month delay for the filing of the requested proof of loss.  Fernandez received his last check on June 15, 2009, while the demand for proof of loss was still pending.  Giving Fernandez the benefit of the doubt and adding 15 months from the date of the last payment, proof of loss had to be filed by September 15, 2010 at the latest.  Fernandez had three years from September 15, 2010 to file suit.  He filed on September 30, 2013, beyond the limitations period.

### B.     The July 27, 2009 Letter

As to the second question, Fernandez conceded that if the July 27, 2009 letter denied his claim, then all of his causes of action are time barred.  The undisputed facts show that on July 27, 2009 at the latest, Mutual of Omaha communicated to Fernandez or his authorized representative that it was denying coverage and explained why.  The chronology makes this clear.

- The 1992 letter told Fernandez that he was required to submit updated COD forms.

- From 1992 until after 2006, Fernandez complied with the COD requirements.

- On May 8, 2009, Mutual of Omaha wrote to Fernandez stating that if he did not submit a COD within 30 days, "this claim will be placed on inactive status until the completed forms are received."

- On June 15, 2009, Mutual of Omaha sent the last monthly disability payment check.

- On June 23, 2009, Mutual of Omaha spoke with Fernandez's son—who was authorized to speak on his fathers' behalf—and told him that no additional benefits would be paid until a COD form verifying continuing disability treatment was completed.

- Fernandez did not receive a July 15, 2009 coverage check.

- On July 27, 2009, Mutual of Omaha sent another letter requiring return of the completed COD form within 30 days and explaining that the claim would be put on "inactive" status unless the form was submitted.

The July 27, 2009 letter, viewed in the context of this chronology, clearly communicated to Fernandez that his continued failure to submit the required updated proof of loss meant the denial of coverage and of his monthly-benefits claim.

In his summary-judgment briefing, Fernandez maintains that "inactive status" is not a denial of claim. But his original petition claimed that the "last payment [he] received . . . was May 15, 2009. Thereafter [he] and his family continued their efforts to satisfy [Mutual of Omaha's] requirements to no avail." (Docket Entry No. 1-2 at 9). Under his breach of contract cause of action, Fernandez stated that Mutual of Omaha failed "to continue payments [of monthly] benefits." (*Id.* at 14). Mutual of Omaha issued its last check on June 15, 2009. On June 23, Mutual of Omaha told Fernandez that he would not receive any more checks until it received the COD form. On July 27, Mutual of Omaha sent another letter stating that Fernandez would not receive another check until he sent the COD form. No later than July 27, 2009, Mutual of Omaha communicated to Fernandez that there was no coverage of the claim and why. There was a clear and continuing repudiation of Fernandez's disability benefits under the policy as a result of his failure to submit an updated COD. Indeed, this was Fernandez's theory of liability in his original petition. If it was not clear by the June 23 phone call that coverage was denied, it was clear by July 27, 2009, at the latest, that given Fernandez's failure to comply with the requirement for an updated COD, the warnings, and the absence of a July check, "inactive status" meant no coverage and no payments. Under *Knott*, the July 27, 2009 letter, following the failure to issue the July check, was a clear denial of the insurance claim. Fernandez conceded that if the July 27, 2009 letter denied the claim, his causes of action were barred. This court agrees.

13

**III.     Summary**

The statutory two-year statute of limitations for the extracontractual claims and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act expired no later than July 27, 2011, two years after Fernandez was on actual notice that Mutual of Omaha would not continue to cover his claim. Fernandez had actual knowledge that his claim was denied by the July 27, 2009 letter and the failure to receive the July 15 check, making July 27, 2012 the last date to file these causes of action under the contractual-limitations period. The July 27, 2009 letter, combined with the June 23 phone call and the missed July 15 check, clearly communicated that coverage had been denied.

Finally, Fernandez had three years to sue after he was required to submit proof of loss. On May 8, 2009, he received notice that proof of loss was required in 30 days. The policy gave him a maximum 15-month grace period to file the required proof of loss. The three-year contractual limitations period expired no later than September 15, 2013, more than 3 years after the 15-month deadline the contract imposed for filing the last proof of loss. This suit was not filed until September 30, 2013.

Fernandez's arguments that he had until 2016 to file a lawsuit do not find a basis in law or fact.

**IV.     Conclusion**

Mutual of Omaha's motion for summary judgment is granted. Fernandez's cross-motion is denied. Final judgment is entered by separate order.

SIGNED on July 25, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge